UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOAQUIN NAVARRO HERNANDEZ                    CIVIL ACTION

VERSUS                                        NO: 10-4602

UNITED STATES CUSTOMS AND                     SECTION: J(3)
BORDER PROTECTION AGENCY


## ORDER AND REASONS

This matter is before the Court on Plaintiff Joaquin Navarro Hernandez's **Motion for Attorneys' Fees and Costs (Rec. Doc. 56)** pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 . The United States Customs and Border Protection Agency opposes Plaintiff's Motion.

### PROCEDURAL HISTORY AND BACKGROUND FACTS

On January 12, 2010, Plaintiff Joaquin Navarro Hernandez, a construction worker and resident of New Orleans, Louisiana, was arrested by United States Customs and Border Protection Agency ("CBP") enforcement agents at a convenience store on a day laborer street corner in northeast New Orleans. Based solely on information obtained through Plaintiff's arrest, the Department of Homeland Security initiated deportation proceedings against

1

him.

Plaintiff sought assistance from the New Orleans Workers'
Center for Racial Justice, a non-profit advocacy organization
that works to defend the rights of low-income workers, of which
he is a member.  With help from the Center's legal staff, on July
23, 2010, Plaintiff filed a FOIA request with CBP, seeking
information related to the agency's immigration enforcement
actions in the city of New Orleans generally, and specifically
with respect to the January 12, 2010 incident during which he was
arrested.  Plaintiff sought to establish an ongoing pattern of
unlawful surveillance and suspicionless raids of immigrant
construction workers on day laborer corners in New Orleans.[1]
Plaintiff specifically requested the following:

    a.    **All documents relating to [Plaintiff].**

    b.    **All documents relating to the events on January 12,
2010 at the gas station referred to in Respondent's
I-213, "Record of Deportable Alien," including, but not
limited to tips, monitoring, surveillance, and/or data
collection relating to the enforcement action referred
to in Respondent's I-213.**

    c.    **All documents relating to all enforcement actions at
the gas station referred to in Respondent's I-213 from
January 12, 2009 to the present, including, but not**

---

[1] Evidence obtained through "egregious" or "widespread"
violations of the Constitution by law enforcement officials are
inadmissible in deportation proceedings in immigration court.
See I.N.S. v. Lopez –Mendoza, 486 U.S. 1032, 1050 (1984).

limited to documents showing planning, monitoring, surveillance, and/or data-collection for the purpose of conducting enforcement actions at the gas station as documents showing interrogations, arrests, and other outcomes.

d.  All documents relating to all tips including, though not limited to, from individuals and local police officials conveyed to CBP relating from January 12, 2009 to the present including but not limited to the January 12, 2010 enforcement action at the gas station referred to in Respondent's I-213.

e.  All documents conveying information about individuals providing information used in relation to monitoring, surveillance, data-collection, and/or enforcement actions at the gas station referred to in Respondent's I-213 from January 12, 2009 to the present including but not limited to the January 12, 2010 enforcement action at the gas station referred to in Respondent's I-213.

f.  All documents related to any program used in the New Orleans area by which U.S. Customs and Border Protection provides financial compensation or any other benefit to individuals providing information used in relation to monitoring, surveillance, data collection, and/or enforcement actions from January 12, 2009 to the present.

g.  All documents related to quotas for stops, interrogations, and/or arrests made by U.S. Customs and Border Protection in the New Orleans area from January 12, 2009 to the present.

h.  All documents related to monitoring, surveillance, data-collection, and/or enforcement actions by U.S. Customs and Border Protection in the New Orleans area in relation to individuals who solicit day work in public spaces, including, but not limited to, street corners.

i.  All documents including but not limited to statements, notes, and/or computer entries made by Mr. Brett R. Gaudet in relation to the gas station referred to in

**Respondent's I-213, including, but not limited to, monitoring, surveillance, data-collection and/or enforcement actions there including but not limited to the January 12, 2010 enforcement action against Respondent.**[2]

When the statutory response deadline passed without event, Plaintiff sent a follow-up letter via overnight mail inquiring as to the status of his FOIA request. This letter also went unanswered. Accordingly, on December 22, 2010, Plaintiff filed the instant lawsuit seeking the production of all relevant, non-exempt records responsive to his request. On January 7, 2011, Plaintiff filed a motion for preliminary injunction, requesting expedited production.

On January 11, 2011, CBP provided its first response to Plaintiff's request, producing 22 pages of partially redacted records taken from Plaintiff's immigration file. CBP also indicated that it had identified another set of documents responsive to Plaintiff's request, namely an I-213 form and other accompanying documents for an individual arrested in the same enforcement action as Plaintiff. However, CBP claimed these records were exempt from disclosure under the FOIA privacy exemption. Beyond that, CBP stated that no other records

---

[2] Rec. Doc. 1, ¶ 20.

responsive to Plaintiff's request existed.

When Plaintiff questioned the sufficiency of CBP's search, the Court ordered CBP to provide Plaintiff with a search affidavit and a <u>Vaughn</u> Index, each of which it subsequently filed into the record.[3] After examining these documents, Plaintiff immediately filed a response identifying several potential deficiencies in CBP's search. In an effort to resolve the dispute regarding the adequacy of CBP's response, Plaintiff noticed depositions for several CBP employees knowledgeable about the agency's record-keeping procedures and immigration enforcement tactics. In response, CBP moved to quash the depositions, which the Court denied on March 23, 2011.

On March 30, the day before the depositions were scheduled, CBP notified Plaintiff that it had discovered additional documents that were "potentially responsive" to his original request, but stated that these documents were wholly exempt from disclosure. Nonetheless, based on information revealed in the depositions, CBP voluntarily agreed to conduct a number of additional searches for potentially responsive information. In

---

[3] Rec. Doc. 19. The United States Court of Appeals for the D.C. Circuit's decision in <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973), established the procedure in FOIA litigation by which an agency prepares an itemized index, correlating each withheld document (or portion thereof) with a specific FOIA exemption and the agency's non-disclosure justification.

particular, CBP agreed to perform the following searches:

a.   Search the Outlook "inbox," "trash," "sent mail," and "drafts" boxes of the following agents for the name "Joaquin Navarro Hernandez," "Joaquin Navarro," or "Joaquin Hernandez," in either the subject line or content of the email: Robert Rivet, Jay St. Romaine, Toby Willcut, Bret Gaudet, Alphonso Gonzales.

b.   Search the Outlook "inbox," "trash," "sent mail," and "drafts" boxes of the following agents for the number "A 088 931 424": Robert Rivet, Jay St. Romaine, Toby Willcut, Bret Gaudet, Alphonso Gonzales.

c.   Search the Intelligence Reporting System database (IRS) for the name "Joaquin Navarro Hernandez," "Joaquin Navarro," or "Joaquin Hernandez."

d.   Search the Intelligence Reporting System database (IRS) for the number "A 088 931 424."

e.   Search E3 for I-213s and any other documents associated with the event number "LS 1001."

f.   Search BPETS for the daily schedules of Border Patrol Agents St. Romain, Gaudet, and Willcut on Jan 12, 2010.

g.   Search the New Orleans Sector communication center radio logs for requests for assistance from NOPD made on January 12, 2010 in relation to Respondent's arrest.

h.   Search the New Orleans sector communication center radio logs for January 12, 2010 for any other communication related to Plaintiff's arrest.

i.   Search the hard files of Gordon Cates, the patrol agent in charge of the New Orleans station at the time of Plaintiff's arrest, and Robert Rivet, the supervising officer for the arresting officers, for previous versions of the narrative section of Plaintiff's I-213.

j.   Search Robert Rivet's Outlook account for a message sent to him by lead border patrol agent James Godhold or by any member of the intelligence unit containing

6

daily arrest information for January 12, 2010.

k.     Search the E-3 database for CBP arrests from January
       12, 2009 to the present with the following arrest
       coordinates: 29.9692, -90.0504.

l.     Search the E-3 database for all I-213s from the New
       Orleans area for which the method of
       location/apprehension is coded as "OA."[4]

m.     Search financial records for the month of January 2010
       for payments made to confidential informants in
       relation to Plaintiff's arrest.

n.     Search E-3 for I-213s where the method of
       location/apprehension is listed as "PI," the status
       when found is listed as "seeking employment," and the
       length of time in the US is greater than one year.

o.     Search BPETS and E3 for operations orders that contain
       the terms "day laborer."

p.     Search John Morris. Outlook account, including the
       inbox, sent mail, drafts, and trash, using each of the
       following terms separately: "day laborer."[5]


These searches revealed a number of documents not previously

identified as responsive to Plaintiff's request.  On June 20,

2011, Plaintiff moved for partial summary judgment to resolve

whether the documents CBP had withheld were exempt from

disclosure.  Three of these documents had been identified as

responsive or "potentially responsive" to Plaintiff's original

_____

    [4]  This search was intended to identify arrests made by CBP
as a result of collaboration with another law enforcement agency,
or "other agency," i.e., "OA."

    [5] Rec. Doc. 49-1, pp. 3-5.

FOIA request: (1) the I-213 arrest report and accompanying documents for the individual arrested in the same enforcement action as Plaintiff; (2) CBP's Interim Informant Guidelines; and (3) a Field Information Report containing intelligence information gathered by CBP about day laborers in New Orleans and detailing Plaintiff's arrest.

The fourth set of documents was a collection of I-213 forms describing the arrest of 62 individuals by CBP agents as a result of collaboration with other law enforcement agencies, including local police. These documents had been identified through the so called "new" searches performed by CBP. Plaintiff argued that there was no legal basis for withholding any of these documents in their entirety, and that any legally protected information could be redacted in lieu of withholding the entire records. After an *in camera* inspection, the Court agreed and granted Plaintiff's motion for partial summary judgment, ordering CBP to produce each of the document sets, allowing redactions only for personal information contained therein.

Having secured access to the disputed documents, Plaintiff subsequently filed the instant motion, seeking an award of $50,880.00 in attorneys' fees and $2,617.60 in costs, pursuant to FOIA's fee-shifting provision. In addition, Plaintiff requests that the Court find that the CBP employees involved acted in an

arbitrary and capricious manner and order the Special Counsel of

the Merit Systems Protection Board to initiate an inquiry into

the necessity of disciplinary proceedings against these

employees. <u>See</u> 5 U.S.C. § 552(a)(4)(F).

## LEGAL STANDARD

"The basic purpose of FOIA is to ensure an informed

citizenry, vital to the functioning of a democratic society,

needed to check against corruption and to hold the governors

accountable to the governed." <u>NLRB v. Robbins Tire & Rubber Co.</u>,

437 U.S. 214, 242 (1978). It has been long recognized that

FOIA's attorney fee provision plays a critical role in

effectuating this purpose. As the Fifth Circuit has explained:

> **"Congress evinced its strong desire, by enacting the
> FOIA, to establish a national policy of open government
> through the disclosure of government information. . . .
> A crucial means of implementing this policy is a
> liberal attorney fee provision. The fee provision is
> designed to remove the barriers a private individual
> faces in insuring government compliance with the policy
> of open government . . . Thus, the fee provision serves
> three clear policies. First, it acts as an incentive
> for private individuals to pursue vigorously their
> claims for information. It allows litigants to
> overcome barriers, most particularly the need for legal
> fees and legal expertise, that government may erect in
> an effort to escape compliance with the law . . .
> Second and third, the provision serves a deterrent and,
> to a lesser extent, a punitive purpose. Congress
> recognized the practical effect of the fee provision is
> that, if the government had to pay legal fees each time
> it lost a case, it would be much more careful to oppose
> only those areas it had a strong chance of winning . .
> . The fee provision is designed to deter the government**

9

> **from opposing justifiable requests for information under the FOIA and to punish the government where such opposition is unreasonable."**

Cazalas v. Department of Justice, 709 F.2d 1051, 1057 (5th Cir. 1983)(internal quotations and citations omitted).

The basic framework for determining whether an award of attorneys' fees and costs is appropriate is a two-step analysis. First, the Court must determine the threshold issue of whether the FOIA litigant is "eligible" for a fee award. In order to be deemed eligible for a fee award, the plaintiff must have "substantially prevailed" in the underlying FOIA lawsuit. 5 U.S.C. § 552(a)(4)(E)(I). Next, provided the plaintiff is eligible for a fee award, the court must also determine whether he is "entitled" to such. In deciding whether a claimant is entitled to an award, a court should consider the following four factors: "(1) the benefit to the public deriving from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records had a reasonable basis in law." State of Texas v. Interstate Commerce Comm'n, 935 F.2d 728, 730 (5th Cir. 1991)

## DISCUSSION

### A. Is Plaintiff "Eligible" for a FOIA Fee Award?

Because the eligibility standard for attorney fee awards

under FOIA has recently changed, a brief explanation of the development of the law is warranted.  Prior to 2001, a plaintiff could demonstrate his eligibility for a fee award in one of two ways.  First, if a plaintiff obtained a court order compelling disclosure of withheld information, he was deemed eligible for a fee award.  Church of Scientology of Cal. v. Harris, 653 F.2d 584, 587-88 (D.C. Cir. 1981).  Even in the absence of a favorable judgment on the merits, however, a plaintiff could also establish eligibility under the so-called "catalyst theory," which had been adopted by several circuits.  Under this theory, a plaintiff was required to show that his lawsuit was the "catalyst" for the agency's decision to voluntarily produce the information, by demonstrating "that prosecution of the action could reasonably be regarded as necessary to obtain the information and that the action had a substantive causative effect on the delivery of the information. Lovell v. Alderete, 630 F.2d 428, 432 (5th Cir. 1980).

In 2001, however, the viability of the catalyst theory was called into doubt by the Supreme Court's decision in Buckhannon Board and Care Home, Inc. v. West Virginia Dept. of Health & Human Resources, 532 U.S. 598 (2001).  In Buckhannon, the Supreme Court held that the catalyst theory was an insufficient basis for establishing eligibility for an award of attorneys' fees under

the Fair Housing Amendments Act ("FHAA") and the Americans with Disabilities Act ("ADA"). See id. at 605. As the Court explained, a defendant's "voluntary change in conduct, although perhaps accomplishing what [a plaintiff] sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." Id. (italics in original). As such, Buckhannon substantially raised the "prevailing party" bar for plaintiffs seeking statutory fee awards – litigants were only eligible for such awards if they were awarded some relief by a court, either in the form of a judgment on the merits or in a court-ordered consent decree. Id.

Although Buckhannon was decided with respect to the FHAA and ADA, two federal circuit courts of appeal subsequently concluded that the Court's analysis was equally applicable to FOIA's attorney fee provision, as well. See Oil, Chem. & Atomic Workers Int'l Union, AFL-CIO v. Dep't of Energy, 288 F.3d 452, 456-57 (D.C. Cir. 2002); Union of Needletrades, Indus. & Textile Employees, AFL-CIO v. INS, 336 F.3d 200, 203 (2d Cir. 2003).

The Buckhannon rule drew considerable criticism, especially in the FOIA context.[6] Essentially, the holding allowed the

---

[6] See S. Rep. No.110-59, at 4, n.3 (2007)(noting that Buckhannon "raises serious and special concerns within the FOIA context.").

Government to ignore valid FOIA claims but prevent an award of attorney fees by disclosing the documents at the last moment before the Plaintiff obtained a judgment. In an effort to address these problems, Congress enacted the OPEN Government Act of 2007, Pub. L. No. 110-175, § 4(a), 121 Stat. 2524, which abrogated the <u>Buckhannon</u> rule with respect to FOIA claims. The Act redefined the term "substantially prevailed" under FOIA to include cases where the plaintiff has obtained "relief" through *either* "a judicial order or an enforceable written agreement or consent decree," *or* "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii). While the Fifth Circuit has yet to address the effect of the amendment, the language added -- particularly sub-part (ii)(II) -- appears to have codified the catalyst theory for FOIA litigants and changed the "eligibility" prong back to its pre-<u>Buckhannon</u> form.

Having established the governing law, the Court now returns to the merits of Plaintiff's motion. In support of his motion, Plaintiff contends that he is eligible for a fee award under FOIA because he obtained relief through *both* a judicial order granting relief on the merits of his claim and through voluntary change in position by CBP. Because the Court concludes that Plaintiff has established his eligibility with respect to the former, it need

13

not address the latter in any depth.

Plaintiff identifies this Court's order granting his motion for partial summary judgment, requiring CBP to produce 263 pages of previously withheld documents as the basis for his eligibility for a fee award. Under <u>Buckhannon</u>, a court order compelling disclosure of documents or information that an agency has refused to produce is clearly sufficient to establish eligibility for such an award. <u>See Piper v. U.S. Dept. of Justice</u>, 339 F. Supp. 2d 13, 20 (D.D.C. 2004)("There is no dispute that the FBI would not have released any of the documents had it not been for the Court's granting of partial relief to plaintiff . . . This is all that is required for plaintiff to be considered a prevailing party.").

While CBP does dispute Plaintiff's eligibility for a fee award, its opposition is based upon the argument that Plaintiff has failed to substantially prevail under the newly revived catalyst theory. In particular, it argues that the "causal nexus" between Plaintiff's lawsuit and the records it subsequently produced to Plaintiff is lacking, because the majority of the documents ultimately disclosed to Plaintiff were not specifically responsive to Plaintiff's original FOIA request. Instead, it argues that these records were identified through several different searches which it voluntarily agreed to conduct

over the course of the litigation.

However, even accepting that Plaintiff has not "substantially prevailed" on the basis of the catalyst theory, this would not preclude Plaintiff's eligibility based on the Court's previous order granting his motion for partial summary judgment. It is clear from the language of the statute that a plaintiff may demonstrate eligibility on either basis – he need not satisfy both. See 5 U.S.C. § 552(a)(4)(E)(ii)("For purposes of this subparagraph, a complainant has substantially prevailed if the complainant has obtained relief through *either* – (I) a judicial order or an enforceable written agreement or consent decree; *or* "(II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial.")(emphasis added).

Furthermore, the Court finds that the factual basis for CBP's legal argument under the catalyst theory – i.e., that the majority of the documents identified and produced were not responsive to Plaintiff's original request – is simply inaccurate. Beyond the 22 pages which Defendant voluntarily disclosed to Plaintiff, the Court ordered CBP to produce the following: the I-213 form and accompanying documents for an individual arrested on the same day as Plaintiff; the CBP Interim Informant Guidelines; and the CBP's Field Intelligence Report.

15

CBP identified each of these three documents as responsive or at least "potentially responsive" to Plaintiff's original FOIA request. Indeed, CBP's own memorandum even appears to concede this fact.[7]

Pursuant to the parties' stipulation, the Court also ordered CBP to produce an additional 62 I-213 forms for individuals arrested as a result of CBP's collaboration with other law enforcement agencies during the year prior to Plaintiff's arrest.[8] While CBP never designated these forms as responsive, the Court has reviewed the records and concludes that they are

_____

[7] See Rec. Doc. 60, p. 3 ("CBP also identified another immigration file of another individual dated January 12, 2010, which was responsive to Plaintiff's request; however, this material was withheld pursuant to FOIA Exemption (b)6."); Rec. Doc. 60, p. 4 ("During preparation for the depositions, [CBP identified] three documents that, if read broadly, were potentially responsive to Plaintiff's request. Plaintiff was notified as to the identification of these documents; however, CBP claimed that the newly discovered documents were exempt from disclosure."); Rec. Doc. 60, p. 9 ("CBP concedes that its Interim Informant Guidelines are potentially responsive to Plaintiff's FOIA request (f)."). The Court also notes that when questions arise regarding whether documents are "potentially" responsive to a Plaintiff's request, an agency has a duty to construe the request liberally. Nation Magazine, Washington Bureau v. U.S. Customs Serv., 71 F.3d 885, 890 (D.C. Cir. 1995).

[8] CBP had previously stipulated that the Court's decision regarding whether any one I-213 form was exempt from disclosure would be binding as to all I-213 forms responsive to Plaintiff's requests. As a result, when the Court granted Plaintiff's motion for partial summary judgment, CBP disclosed the additional I-213 forms.

responsive to Plaintiff's request. CBP's argument that these records were beyond the scope of Plaintiff's original FOIA request is based upon the flawed premise that Plaintiff sought *only* documents pertaining to the specific "gas station referred to in [Plaintiff's] I-213."[9] However, the language of Plaintiff's request explicitly disclaimed any such limitation; he specifically requested "all documents relating to tips . . .from individuals and local police officials conveyed to CBP . . . from January 12, 2009 to the present, *including but not limited to* the January 12, 2012 enforcement action at the gas station referred to in [Plaintiff's] I-213."[10] As such, the Court finds that these documents fall squarely within the scope of this plainly worded request, and CBP's contentions to the contrary are unavailing.

Finally, even if it is true that its decision to perform the searches that uncovered these records was voluntary, the same cannot be said for its decision to disclose them. Over the course of this litigation, CBP withheld each record mentioned above in its entirety. Only after the Court granted Plaintiff's motion for partial summary judgment, over Defendant's objections,

---

[9] <u>See</u> Defendant's Opposition Memorandum, Rec. Doc. 60, p.8.

[10] <u>See</u> Complaint, Rec. Doc. 1, ¶ 20.

17

were any of these documents released to Plaintiff.  This order altered the legal relationship of the parties in Plaintiff's favor, which is all that is required to establish his eligibility for a fee award under FOIA.  See Campaign for Responsible Transplantation v. Food & Drug Admin., 511 F.3d 187, 195 (D.C. Cir. 2007)(noting that "it is clear that a court order requiring a recalcitrant agency to release documents pursuant to the legal mandate of FOIA is sufficient to render the plaintiff a prevailing party"); see also See Judicial Watch, Inc. v. F.B.I., 522 F.3d 364, 370 (D.C. Cir. 2008)(even a court order simply memorializing an agency's voluntary agreement to produce certain documents is sufficient to establish eligibility for a fee award under FOIA).  As such, the Court finds that Plaintiff has obtained relief through a court order, thus demonstrated "substantially prevailed" through a court order is eligible for an award of attorneys' fees.

**B.  Is Plaintiff "Entitled" to a Fee Award?**

Because the Court concludes that Plaintiff has substantially prevailed on the merits of his claim, the Court must next address whether Plaintiff is "entitled" to an award of attorneys' fees. A district court has broad discretion to determine whether a FOIA litigant is entitled to a fee award.  Blue v. Bureau of Prisons, 570 F.2d 529, 533 (5th Cir. 1978).  In exercising this

discretion, however, a court must consider the following factors:

"(1) the benefit to the public deriving from this case, (2) the commercial benefit to the complainant, (3) the nature of his interest in the federal records sought, and (4) whether the government's withholding of the record sought had a reasonable basis in law." State of Texas, 935 F.2d at 730. While certain factors may carry more weight than others under the particular facts of a given case, a court must give each of the four factors some consideration in determining the propriety of an award. See Blue, 570 F.2d at 534 (holding that district court abused its discretion in considering only one of the four Blue factors).

### i. The Public Benefit Deriving from Plaintiff's Case

The public benefit factor has been described as perhaps the most important factor in determining entitlement to a fee award. See Miller v. U.S. Dept. of State, 779 F.2d 1378, 1389 (8th Cir. 1985). When weighing this factor, a court should consider "the degree of dissemination and likely public impact that might be expected from a particular disclosure." Blue, 570 F.2d at 533. Where "the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices," a fee award is favored. Id. at 534. Conversely, when a fee award "would merely subsidize a matter of private concern," an award is less appropriate. Id.

19

Here, Defendant takes the position that any public benefit resulting from the disclosure of these records is marginal or indefinite, at best. It contends that Plaintiff's FOIA request was merely used as a discovery tool to uncover information to use his deportation proceeding; thus, in Defendant's view, his FOIA request had little to do with increasing the fund of public information available for making political decisions.

It is undoubtedly true that Plaintiff requested information to ensure that he was afforded a full and fair hearing at his deportation proceeding; Plaintiff has readily acknowledged as much. However, the Fifth Circuit has rejected the notion that a strong personal interest in obtaining access to information necessarily precludes the possibility that a broader public interest will be served by its release. See Cazalas, 709 F.2d at 1053 ("[A]n acknowledgment of appellant's strong personal interest in securing certain letters and notes is not necessarily inconsistent with an equally strong public interest in also receiving these items.").

As an initial matter, it is important to note that the "simple disclosure of government documents" does not in and of itself establish a public benefit for the purposes of this analysis. Citizens for Responsibility and Ethics in Washington v. U.S. Dept. of Justice, 2011, WL 5075102, (D.D.C. Oct. 26,

2011)(citing <u>Alliance for Responsible CFC Policy</u>, 631 F. Supp. 1469, 1471 (D.D.C. 1986).  This "broadly defined benefit" is not what Congress contemplated in providing for attorneys' fees for successful FOIA litigants.  <u>Cotton v. Heyman</u>, 63 F.3d 1115, 1120 (D.C. Cir. 1995).

Here, however, Plaintiff has done considerably more.  At present, there is a vigorous public debate on the topic of targeted immigration enforcement, most notably as to whether such efforts should prioritize aliens with documented criminal histories, as opposed to individuals who have committed only civil immigration law violations, such as Plaintiff.[11]  There is also widespread public debate on the related issue of whether and to what extent local police should be involved with federal immigration enforcement efforts.[12]  Both these questions are of

---

[11]  <u>See, e.g.</u>, Christopher Goffard, et. al., <u>300,000 Deportation Cases to be Reviewed: Illegal Immigrants Considered Low Priority May be Able to Stay</u>, CHI. TRIBUNE, Aug. 19, 2011 (discussing Obama administration's announcement that it will refocus immigration enforcement efforts on convicted felons and other public safety threats instead of low-priority individuals with no criminal record); Charlie Savage, <u>2,901 Arrested in Crackdown on Criminal Immigrants</u>, N.Y. TIMES, Sep. 29, 2011 (noting the "record level" of deportation proceedings and discussing shift in Department of Homeland Security immigration policy); Alicia Caldwell, <u>U.S. Undertaking Case-by-Case Review on Deportation</u>, ASSOCIATED PRESS, Aug. 18, 2011.

[12]  <u>See, e.g.</u>, Paloma Esquivel, <u>Controversial Immigration Enforcement Program is Target of Lively Protest</u>, LOS ANGELES TIMES, Aug. 15, 2011 (discussing public protest of federal "Secure

substantial public interest in the City of New Orleans, where the

plight of the large population of immigrant workers who have

assisted in rebuilding efforts after Hurricane Katrina has been a

matter of particular concern.[13]  Here, Plaintiff has used the

records disclosed as a result of this case to increase public

---

Communities" immigration enforcement initiative, under which
information obtained by local law enforcement agents is required
to be forwarded to immigration officials for the potential use
for deportation actions); Paloma Esquivel, Bill Targets Local
Deportation Role: Legislation Would Restrict the Holding of
Arrestees for Federal Immigration Action, LOS ANGELES TIMES, Jan.
28, 2012 (discussing a series of state laws seeking to exempt
police and other local law enforcement officials from cooperation
with federal immigration enforcement officials); Amy Harris,
Illegal-immigrant Crime Targeted:  13 Counties to Adopt Federal
Program; Fears of Racial Profiling, Distrust of Police Raised,
SEATTLE TIMES, July 4, 2011 (describing public debate regarding
collaboration between local police and federal immigration
enforcement agents and whether such actions breed distrust of
local police).

[13]   See, e.g., Richard A. Webster, Day Laborers Protest ICE
Raid, New Orleans CityBusiness, Oct. 21, 2011, available at
http://neworleanscitybusiness.com/thenewsroom/2011/10/21/day-labo
rers-protest-ice-raid/ (describing public protest of immigration
enforcement raid on non-criminal day laborers); Shaban Bigad,
N.O. Council VP to Insist Sheriff Answer Jail Questions, Fox 8
News, June 30, 2011, available at
http://www.fox8live.com/news/local/story/N-O-Council-VP-to-insist
-Sheriff-answer-jail/VYLDi5ZFpESmeP4dgiophg.cspx (describing
political debate concerning Orleans Parish Sheriff's
collaboration with immigration officials with respect to
undocumented day laborers suspected to be illegal immigrants);
Eve Abrams, Immigrants Who Rebuilt New Orleans Left Unprotected,
WWNO, Aug. 30, 2011, available at
http://www.publicbroadcasting.net/wwno/news.newsmain/article/0/0/
1846717/news/Immigrants.Who.Rebuilt.New.Orleans.Left.Unprotected
(discussing plight of immigrant day laborers in New Orleans after
Hurricane Katrina).

awareness of the above issues, as well as to facilitate public

oversight of CBP's enforcement of federal immigration law in the

New Orleans area, both as it relates to his own case and in

general.[14]

As previously discussed, Plaintiff filed his FOIA request

and pursued this litigation through the New Orleans Workers'

Center for Racial Justice, a non-profit advocacy organization

that works to defend the rights of low-income workers and to

increase community participation in public policy initiatives.

Upon Defendant's release of the requested documents, these

documents were immediately provided to the Center, which has used

the information as a part of its "Know Your Rights" outreach and

advocacy campaigns in the New Orleans community.[15]   It also

---

[14]   See Complaint, Rec. Doc. 1, ¶ 5 ("Mr. Joaquin Navarro
Hernandez brings this complaint to vindicate the New Orleans'
community's right to information about U.S. Customs and Border
Protection's ongoing, covert, community raids.   The release of
these documents is essential to facilitate much-needed community
monitoring and oversight of actions by U.S. Customs and Border
Protection.").

[15]   Other courts have readily found the public benefit factor
to be met when a FOIA litigant uses the information disclosed to
facilitate public debate on important political issues.   See,
e.g. Judicial Watch, Inc. v. U.S. Dept. of Homeland Sec., 2009 WL
1743757, at *7 (D.D.C. 2009)(finding public benefit in release of
border surveillance footage, in light of public's "heightened
interest in national security"); Judicial Watch, Inc. v. U.S.
Dept. of Justice, 774 F. Supp. 2d 225, 230 (D.D.C.
2011)(explaining that records related to widely debated
government surveillance program were "precisely the sort of

intends to make continued use of the records in its efforts to promote immigration reform and increase public awareness of these issues both nationally and in the New Orleans area.  The Court also notes that Plaintiff's case has garnered at least some independent media attention, as well.[16]

As a result of these efforts, the information disclosed will surely "add to the fund of information that citizens may use in making vital political choices."  <u>Blue</u>, 570 F.2d at 534. Indeed, the legislative history of FOIA shows that Congress contemplated that the public benefit factor would favor a fee award in circumstances such as this.  See <u>Church of Scientology of California v. U.S. Postal Service</u>, 700 F.2d 486, 492 n.6 (9th Cir. 1983)(quoting H.R. Rep. No. 1380, 93rd Cong., 2d Sess. 10 (1974))(explaining that Congress considered the public benefit

---

information that is valuable to the public" in making informed political decisions); <u>Elec. Privacy Info. Ctr. v. U.S. Dept. of Homeland Sec.</u>, 2011 WL 4014308, at *13 (D.D.C. Sep. 12, 2011)(public benefit factor weighed in favor of fee award when documents obtained were used to inform public debate on Transportation Safety Administration's controversial whole body imaging devices); <u>Found. v. Office of Dir. of Nat'l Intelligence</u>, 2008 WL 2331959, at *3 (N.D. Cal. June 4, 2008)(finding public benefit resulting from disclosure of records which plaintiff planned to disseminate in order to inform public debate on government surveillance program under active consideration by Congress).

[16]  <u>See</u> Sabrina Canfield, <u>Info Sought on Surveillance of Day Laborers</u>, Courthouse News Service, Dec. 27, 2010, <u>available at</u> http://www.courthousenews.com/2010/12/27/32875.htm.

factor to favor a fee award where "a public interest group was seeking information to further a project benefitting the general public."). Here, the Center facilitated Plaintiff's FOIA request for the purposes of benefitting the public and used the information obtained in a manner consistent with the policy objectives of § 552(a)(4)(E). Accordingly, the Court finds that the first Blue factor favors a fee award.

**ii. The Commercial Benefit to the Complainant**

The second factor considers whether a plaintiff obtained a commercial benefit through the information sought. FOIA's attorney fee provisions were not intended to compensate litigants whose private commercial interests provide sufficient incentive to pursue access to information through FOIA litigation. See Fenster v. Brown, 617 F.2d 740, 743 (D.C. Cir. 1979). However, for other individuals, without the benefit of FOIA's fee-shifting provisions, the prohibitive costs of litigation would essentially act as a bar to judicial review of an agency's decision to withhold information. As such, the Fifth Circuit has recognized that this factor favors an award when the litigant pursuing disclosure is indigent, a public interest group, or a disinterested scholar. Blue, 570 F.2d at 534.

Here, Plaintiff is an immigrant day laborer with essentially no monetary resources. Furthermore, he is represented by a

public interest organization that performs substantial advocacy work in the day laborer community on behalf of other individuals like Plaintiff.  An award of fees in this case would appear to enhance Congress's goal that agency decisions should receive judicial review even when the requestor cannot afford to pay the costs of bringing a lawsuit.  Accordingly, this factor also weighs in favor of a fee award.

### iii.  The Nature of Plaintiff's Interest in the Records Sought

A court must also consider the nature of a plaintiff's interest in the records sought.  When a plaintiff seeks to protect only a private interest that provides sufficient incentive to litigate his FOIA claim, the policy objectives of §552(a)(4)(E) are not furthered by providing a fee award.  <u>Cuneo v. Rumsfeld</u>, 553 F.2d 1360, 1367 (D.C. Cir. 1977).

Here, Defendant contends that Plaintiff needed no additional incentive to pursue his FOIA claim because his personal interest in obtaining the documents was so strong.  This strictly personal interest, it argues, more than compensates for his lack of commercial interest in this case.  Defendant additionally submits that courts have roundly refused to award fees in cases where a plaintiff's FOIA's request is intended as a discovery tool for other pending litigation, as Plaintiff here did.

On this point, the Court finds a recent decision in a case with similar facts instructive. In <u>Jarno v. Dept. of Homeland Sec.</u>, 365 F. Supp. 2d 733, 739-40 (E.D. Va. 2005), the Court awarded fees to a FOIA plaintiff who had prevailed in obtaining documents relating to his pending immigration asylum proceeding. In considering the "plaintiff's interest" factor, the Court explained:

> **"Plaintiff's central interest in this case was to force the defendant to disclose the requested documents in order to facilitate the fair adjudication of his political asylum claim in Immigration Court. Plaintiff also wished to make Congress, the press, advocacy groups, and the public aware of the relevant information regarding his case. Although Plaintiff was in large part motivated by a desire to use the documents requested to ensure that his own asylum case was decided properly by the Immigration Court, the public benefit derived from the released documents and his case overall are substantial."**

<u>Id.</u> at 740.

Likewise, here, Plaintiff sought to ensure he was afforded a full and fair hearing in his pending deportation proceeding. This interest, while personal in nature, also implicates the strong public interest in preserving the administration of justice in our nation's immigration courts, as was recognized by the court in <u>Jarno</u>. "Attorney's fees are appropriate where a FOIA response helps protect the public's interest in the fair and just administration of justice." <u>Id.</u> at 739 (internal quotations

27

omitted); see also Mayock v. I.N.S., 736 F. Supp. 1561, 1564
(N.D. Cal. 1990)(plaintiff's interest factor supported an award
when requestor sought information "not just for himself, but also
for other litigants and attorneys before the INS"); Crooker v.
U.S. Parole Com'n, 776 F.2d 366, 368 (1st Cir. 1985)(finding
plaintiff's interest factor supported fee award where plaintiff's
interest "was to ensure that the Parole Commission relied on
accurate information in making decisions affecting his liberty")
Landano v. U.S. Dept. of Justice, 873 F. Supp. 884, 892 (D.N.J.
1994)(noting that "although he has a strong private interest in
the information, this interest furthers the public's concern with
the criminal justice system"). Furthermore, as previously noted,
Plaintiff's request was not solely self-motivated; he also sought
information in order to raise public awareness of issues of
public import and from which other individuals could benefit,
both of which also serve a substantially public purpose. Id.

Finally, it is true, as Defendant suggests, that some courts
have recognized that an award of attorneys' fees is generally
inappropriate when a litigant utilizes FOIA as a means of
obtaining earlier access to information for use in other pending
litigation. See, e.g., Sampson, 559 F.2d at 712 (noting that a
court "would not award fees if a business was using the FOIA . .
. as a substitute for discovery in private litigation with the

government"); <u>Horsehead Indus., Inc. v. EPA</u>, 999 F. Supp. 59, 67 (D.D.C. 1998)("Congress clearly recognizes that the FOIA would be used as a means of obtaining discovery from the Government, and significantly, in such cases attorneys' fees would not ordinarily be awarded."); <u>Guam Contractors Ass'n v. U.S. Dept. of Labor</u>, 570 F. Supp. 163, 169 (N.D. Cal. 1983)(fee award improper where it was clear that the company had used his FOIA suit as a "headstart" for discovery in another lawsuit against the government).

However, these cases are readily distinguishable from the instant case; the vast majority involve business firms seeking trade information for use in other private civil litigation, and none involve deportation proceedings.  There is no formal discovery available to a respondent in a deportation proceeding. <u>Campos v. Nail</u>, 940 F.2d 495, 498 n.8 (9th Cir. 1991).  As such, FOIA is essentially the only means available for an individual to obtain information for use in a deportation proceeding.  <u>See</u> 2 C. GORDON & H. ROSENFELD, IMMIGRATION LAW AND PROCEDURE § 1.18d (1985); <u>Jarno</u>, 365 F. Supp. 2d at 740 ("FOIA is the exclusive means that a respondent in Immigration Court proceedings must use to obtain documents for use in immigration proceedings.").  Accordingly, the Court concludes that this factor also favors a fee award.

**iv. Whether the Government Had a Reasonable Legal Basis for**

## Withholding the Records Sought

Finally, the Court must consider whether the Government had a reasonable legal basis for withholding the requested information. This factor does not require an agency to show that its decision was ultimately vindicated in court. See Lasalle Extension Univ. v. F.T.C., 627 F.2d 481, 486 (D.C. Cir. 1980). All that is required is a showing that the agency had a "colorable legal basis" for concluding that the information was exempt and that it has not been "recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." Fenster v. Brown, 617 F.2d 740, 744 (D.C. Cir. 1979)(quoting Cuneo, 553 F.2d at 1365-66).

Here, CBP argues that it had a statutory basis for withholding each of the documents it refused to turn over in response to Plaintiff's request. In particular, it argues that many of the records contained sensitive personal information about individuals, which the Court acknowledged by ordering the documents to be produced in redacted form. It further submits that other documents withheld under the law enforcement privilege had previously been marked "official use only – law enforcement sensitive." Thus, it argues that it cannot be deemed unreasonable for it to withhold such documents when the document was clearly identified in this manner.

At least as to some of the records, the Court agrees that Defendant's conduct *after* the commencement of this action was not particularly unreasonable. However, this fails to account for Defendant's wholesale disregard of Plaintiff's FOIA request *prior to* the time that suit was filed. A court may consider an agency's initial failure to respond to a FOIA requestor in weighing the "reasonable basis in law" factor. <u>Judicial Watch, Inc.</u>, 774 F. Supp. 2d at 231 ("Even though DOJ's conduct after the suit was filed was generally reasonable, this initial failure to respond still weighs in favor of a fee award."); <u>Elec. Privacy Info. Ctr. v. U.S. Dept. of Homeland Sec.</u>, 2011 WL 4014308, at *13 (D.D.C. Sep. 12, 2011)("DHS's administrative delay and a generic claim of a FOIA backlog do not form a 'reasonable basis in law' for withholding in these circumstances.").

FOIA's fee provision is intended to incentivize the government to "promptly turn over – before litigation is required – any documents that it ought not withhold. That purpose will be ill-served if the government can prevail on this factor by saying nothing and forcing the requester to sue, only then to offer 'no resistance.'" <u>Davy</u>, 550 F.3d at 1165 (Tatel, J., concurring). Here, Defendant offers no explanation for its failure to respond to Plaintiff's initial request or to his follow-up

communications.  Accordingly, even if CBP's basis for withholding particular documents may not have been unreasonable, this factor nonetheless weighs in favor of a fee award.[17]

### v. Plaintiff's Request for a Written Finding that the CBP Employees Involved Acted Arbitrarily and Capriciously

Plaintiff has additionally requested a written finding that the CBP employees involved acted in an arbitrary and capricious manner, such that the Special Counsel of the Merit Systems Protection Board will initiate an inquiry into the need for disciplinary proceedings against these employees.  5 U.S.C. § 552(a)(4)(F) provides that "[w]henever a court orders the production of any agency records improperly withheld from the complainant and assesses against the United States reasonable attorney fees and other litigation costs, and the court additionally issues a written finding that the circumstances surrounding the withholding raise questions whether agency personnel acted arbitrarily or capriciously with respect to the withholding, the Special Counsel shall promptly initiate a proceeding to determine whether disciplinary action is warranted

---

[17] Even if the Court concluded that this factor weighed against assessing a fee award, one factor alone is not dispositive in considering requests for attorneys' fees under FOIA.  See La Salle Extension Univ., 627 F.2d at 484; Crooker, 776 F.2d 366 (awarding fees even where government had a reasonable basis for withholding the information).

against the officer or employee who is primarily responsible for the withholding." Here, although CBP's initial failure to respond to Plaintiff's request was unreasonable, on the whole, the Court finds the conduct of the agency personnel involved does not rise to the level of arbitrariness or capriciousness. Accordingly, the Court declines to issue the requested finding in this case.

### C. The Reasonableness of the Fees Requested

Because all of the <u>Blue</u> criteria weigh in favor of an award of attorneys' fees, the Court must next turn to the methodology required to calculate the appropriate fee. Federal courts in this circuit generally apply the lodestar method outlined by the Fifth Circuit in <u>Johnson v. Georgia Highway Express, Inc.</u> to calculate fee awards. 488 F.2d 714 (5th Cir. 1974) (en banc). Under this two-step process, the Court must first calculate the benchmark lodestar by multiplying the number of hours reasonably expended in the case by the prevailing hourly rate for legal services in the district. <u>Jimenez v. Wood County, Tex.</u>, 621 F.3d 372, 379-380 (5th Cir. 2010).

After the lodestar amount is calculated, the second step allows the Court to make downward adjustments, or in rare cases, upward adjustments, based upon consideration of the twelve <u>Johnson</u> factors. These factors include: (1) the time and labor

required; (2) the novelty and difficulty of issues; (3) the skill
requisite to perform the legal service properly, (4) the
preclusion of other employment by the attorney due to acceptance
of the case, (5) the customary fee, (6) whether the fee is fixed
or contingent, (7) time limitations imposed by the client or the
circumstances, (8) the amount involved and the results obtained,
(9) the experience, reputation, and ability of the attorneys,
(10) the "undesirability" of the case, (11) the nature and length
of the professional relationship with the client, and (12) awards
in similar cases.  Johnson, 488 F.2d at 717–19.

### i. The Number of Hours Reasonably Spent

The Court must first determine whether the requested hours
expended by Plaintiff's counsel were reasonable in light of the
facts of the case and the work performed.  The burden of proving
the reasonableness of the hours expended is on the fee applicant.
Mota v. Univ. of Tex. Houston Health Science Ctr., 261 F.3d 512,
528 (5th Cir. 2001).  Here, Plaintiff has requested an award in
the amount of $53,497.60, representing $50,880.00 in attorneys'
fees plus $2,617.60 in litigation costs.  This total includes
$31,170.00 for the services of lead counsel Jennifer Rosenbaum,
based on a total of 103.9 hours billed at an hourly rate of $350.
It also includes $21,900.00 for the serves of co-counsel Jessica
Karp, based on a total of 98.55 hours billed at an hourly rate of

$200 per hour.

The Court must determine whether these records reflect that Plaintiffs' counsel exercised billing judgment. See Saizan v. Delta Concrete Prods. Co., Inc., 448 F.3d 795, 800 (5th Cir. 2006). A court should exclude all time billed for work that is excessive, duplicative, or inadequately documented. Jimenez, 621 F.3d at 379-80 (citing Watkins v. Fordice, 7 F.3d 453, 457 (5th Cir. 1993)).

Defendant contends that these totals should be reduced, given the small amount of material ultimately produced in response to Plaintiff's broadly worded requests. The Court rejects that the total hours reasonably expended in this case should be calculated with reference to the ultimate amount of material produced. To the extent that Plaintiff ultimately uncovered fewer records than expected, this only underscores the significant time and expense imposed on individuals by an agency's failure to comply with the mandates of FOIA. As one court has aptly put it, an agency cannot put a requestor "through the time and expense of enforcing compliance with FOIA and then complain that the resources expended were out of proportion to the good obtained." Los Angeles Gay & Lesbian Cmty. Servs. Ctr. v. IRS, 559 F. Supp. 2d 1055, 1061 (C.D. Cal. 2008); see also Poulsen v. U.S. Customs and Border Protection, 2007 WL 160945, at

*3 (N.D. Cal. Jan. 17, 2007)(rejecting agency's argument that fee award should be reduced "based on the comparatively small amount of pages ordered to be released"). No reduction is warranted on this basis.

Having reviewed the applicable billing records, the Court finds the billing records kept by counsel in this case are sufficiently clear and detailed in order to allow for adequate review, and that the hours expended are reasonable, under the facts of this case. The Court finds no basis to conclude that any of the work for which compensation is requested was excessive, duplicative, or otherwise unnecessary. Additionally, the Court finds that Plaintiff's counsel have exercised reasonable billing judgment by excluding hours spent by legal assistants, and by voluntarily reducing their total request by 10%. As such, the Court concludes that the total of 202.45 hours expended for the work performed in this case is reasonable.

**ii. The Reasonableness of the Hourly Rate for Each Participating Attorney**

Attorney's fees must be calculated at the "prevailing market rates in the relevant community for similar services by attorneys of reasonably comparable skills, experience, and reputation." Blum v. Stenson, 465 U.S. 886, 895 (1984). The applicant bears the burden of producing satisfactory evidence that the requested

36

rate is aligned with prevailing market rates. <u>Wheeler v. Mental Health & Mental Retardation Auth. of Harris County, Tex.</u>, 752 F.2d 1063, 1073 (5th Cir. 1985).

Here, Plaintiff seeks a fee at an hourly rate of $350 for work performed by lead counsel Jennifer Rosenbaum, an attorney who has been practicing law for over eight years and who currently serves as Legal Director of the New Orleans Workers' Center for Racial Justice, where she specializes in civil rights, immigration, and employment litigation. Ms. Rosenbaum is a graduate of Harvard Law School and has served as a law clerk to the Honorable Thomas A. Wiseman, Jr., in the U.S. District Court for the Middle District of Tennessee. She has also worked for three years as a staff attorney at the Southern Poverty Law Center; for two years as a Skadden Fellow and staff attorney at South Migrant Legal Services in Texas.[18]

Plaintiff also seeks a fee at an hourly rate of $200 for the services of co-counsel Jessica Karp, who has been practicing law for approximately two years. Ms. Karp is a staff attorney at the National Day Laborer Organizing network, where she specializes in civil rights and immigration litigation. She is a graduate of Columbia Law School and has served as a law clerk for the

---

[18]   Rec. Doc. 56-6.

Honorable Stephen Reinhardt of the U.S. Ninth Circuit Court of Appeals.[19]

In support of this request, Plaintiff has submitted sworn affidavits from his attorneys' and from William Quigley, a law professor and the clinical director of the Gillis Long Poverty Law Center at Loyola University in New Orleans. Each attests that the requested rates are consistent with the prevailing rates for similar work for attorneys of comparable experience.

Defendant has submitted no direct evidence to contradict these affidavits. Instead, it cites numerous other cases from this district in which courts have assessed fees at rates lower than those requested in the present motion. Based upon this authority, Defendant submits that the rates requested are excessive, and posits that rates of $175 and $125 are more appropriate.

As an initial matter, the Court notes that none of the cases upon which Defendant relies were decided recently; in fact, only one of the ten cases cited was decided within the last five years. As such, these cases would tend to hold substantially less weight than the evidence submitted by Plaintiff as to the *current* prevailing rates in the New Orleans area. Nonetheless,

---

[19]  Rec. Doc. 56-8.

the Court has reviewed the case law from this district for the past two years and has concluded that the requested hourly rates should be reduced. See, e.g. Smith v. Sprint/United Mgmt. Co., 2011 6371481 (E.D. La. Dec. 20, 2011)(awarding $290.00/hour for a partner with 16 years experience and $240/hour for an associate with 8 years of experience); Construction South, Inc. v. Jenkins, 2011 WL 3892225 (E.D. La. Sept. 2, 2011)(awarding $350/hour for two partners with 36 and 30 years of experience; $200/hour for an associate with four years of experience; and $180/hour for an associate with two years of experience); Atel Mar. Investors, LP v. Sea Mar Mgmt., LLC, 2011 WL 2550505 (E.D. La. June 27, 2011)(awarding $250 for partner with 35 years of experience; $250 for a partner with 11 years of experience; and $175 for an associate with 2 years of experience); Entergy La., L.L. C. v. The Wackenhut Corp., 2010 WL 4812921 (E.D. La. Nov. 17, 2010) (awarding $175.00/hour to attorney with 16 years of experience); Wilson v. Tulane Univ., 2010 WL 3943543 (E.D. La. Oct. 4, 2010)(awarding $250.00/hour and $160.00 hour to attorneys with 25 and four years experience respectively); Hebert v. Rodriguez, 2010 WL 2360718 (E.D. La. June 8, 2010) (awarding $300.00/hour to partner with 33 years of experience); Gulf Coast Facilities Mgmt, L.L.C. v. BG LNG Servs., L.L.C., 2010 WL 2773208 (E.D. La. July 13, 2010)(awarding $300.00/hour to attorneys with 17 years

experience and $180.00/hour and $135.00/hour to attorneys with seven years and two years experience respectively); <u>Belfor USA Group, Inc. v. Bellemeade Partners, L.L.C.</u>, 2010 WL 6300009 (E.D. La. Feb. 19, 2010) (awarding $210.00/hour, $250.00/hour and $180.00/hour to attorneys with 20, 10, and 4 years of legal experience, respectively); <u>Marks v. Standard Fire Ins. Co.</u>, 2010 WL 487403 (E.D. La. Feb. 3, 2010) (awarding $185.00/hour to attorney with seven years of experience).

Based on the fees set by the courts in the foregoing cases, the Court finds that the requested rates are beyond the higher end of the prevailing market rates. Accordingly, the Court will assess fees at a rate of $300.00 per hour for Jennifer Rosenbaum and $180.00 per hour for Jessica Karp.

**iii. Application of the <u>Johnson</u> Factors**

These revised rates yield total fees of $31,170.00 and $17,739.00 for Jennifer Rosenbaum and Jessica Karp, respectively, for an aggregate total of $48,909.00. There is a strong presumption that this figure is reasonable. <u>Saizan</u>, 448 F.3d at 800 (citing <u>Heidtman v. County of El Paso, Tex.</u>, 171 F.3d 1038, 1043 (5th Cir.1999)). Nonetheless, the Court must still consider the twelve <u>Johnson</u> factors in step two of its lodestar analysis. Though the Court need not be "meticulously detailed" in its analysis, it must nonetheless articulate and clearly apply the

twelve factors to determine how each affects the lodestar amount. Id. (quoting Forbush v. J.C. Penney Co., 98 F.3d 817, 823 (5th Cir. 1996)). The Court should give special consideration to the time and labor involved, the customary fee, the amount involved and the results obtained, and the experience, reputation, and ability of counsel. Id. However, to the extent that a factor has been previously considered in the calculation of the benchmark lodestar amount, a court should not make further adjustments on that basis. Id.

Here, the Court has carefully considered each of the Johnson factors and has concluded that no further adjustment of the lodestar amount is necessary.

**(1) Time and Labor Required**

Plaintiff was ultimately forced to retain counsel and commence this litigation as a result of Defendant's failure to respond to his FOIA request. The Court further finds that Defendant's consistent refusals to produce the requested documents after this suit was filed further increased the time and labor required to resolve this matter. However, because Plaintiff does not seek an upward adjustment on this basis, the Court finds this factor confirms the reasonableness of the lodestar amount calculated in step one.

**(2) Novelty and Difficulty of the Issues Involved**

The Court finds that the legal issues presented in this case – most notably, the scope of FOIA's privacy exemptions, 5 U.S.C. § 552(b)(6) and (b)(7)(c), and law enforcement exemption, 5 U.S.C. § 552(b)(7)(e), as applied to the documents at issue – were at least somewhat difficult and novel. Furthermore, the difficulty of the issues involved were compounded by the pressing time constraints imposed by Plaintiff's pending deportation proceeding. Plaintiff's counsel successfully and skillfully resolved these issues in an expeditious manner, and the lodestar amount reflects these efforts.

**(3) Skill Required**

This factor was already accounted for in the Court's consideration of the second <u>Johnson</u> factor.

**(4) Preclusion of Other Employment**

This factor accounts for the fact that an attorney may be forced to turn away other potential clients and cases due by virtue of the time and resources required of the case in which the fee award is at issue. Plaintiff's counsel have introduced sworn testimony indicating that they were precluded from accepting other worthy cases as a result of the amount of time required to litigate this case, and the Court finds no reason to doubt the veracity of these statements.

**(5) Customary Fee**

This factor was already accounted for in the Court's calculation of the lodestar benchmark amount.

**(6) Whether Fee Is Fixed or Contingent**

Plaintiff's counsel accepted this case *pro bono*. Accordingly, this factor is not relevant to the Court's determination.

**(7) Time Limitations Imposed by the Client or Circumstances of the Case**

The circumstances of this case imposed considerable time constraints on Plaintiff's counsel.  In particular, Plaintiff's pending deportation hearing required Plaintiff's counsel to complete work in an expeditious fashion in order to secure access to the requested documents when they would still be of potential value to Plaintiff.  Because there was little time for unnecessary or redundant work, the Court finds that this factor further confirms the reasonableness of the hours counsel expended in this case.

**(8) Amount Involved and Results Obtained**

The degree of success obtained is perhaps the most important Johnson factor.  Abner v. Kansas City So. Ry. Co., 541 F.3d 372, 376–77 (5th Cir. 2008) (citing Johnson v. Ga. Highway Express, 488 F.2d 714, 717–19 (5th Cir. 1974)).  Here, Plaintiff was successful on virtually every disputed issue in this litigation.

Furthermore, though his counsels' diligent efforts, he has successfully achieved the ultimate relief sought when he filed this lawsuit, in that he has obtained  access to each of the requested documents previously withheld by Defendant. Plaintiff's counsel therefore deserve recognition and compensation commensurate with this level of success, and the Court finds that the lodestar provides as much.

**(9) Experience, Reputation, and Ability of Attorneys**

This factor was already accounted for in the Court's calculation of the lodestar benchmark amount.

**(10) Undesirability of the Case**

This factor is intended to incentivize attorneys to accept undesirable cases, most often in the civil rights context. <u>See</u> <u>Cooper v. Pentecost</u>, 77 F.3d 829 (5th Cir. 1996).  However, an upward adjustment is rarely given under this factor, and, in any event, Plaintiff does not seek an adjustment under this factor. Accordingly, this factor does not warrant an adjustment in this circumstance.

**(11) Nature and Length of Professional Relationship with Client**

The rationale behind this factor is to compensate attorneys who have discounted their fees to longstanding clients. <u>See</u> <u>Johnson</u>, 488 F.2d at 719.  Because Plaintiff's counsel accepted

this case *pro bono*, the considerations underlying this factor are
not implicated here. As such, the Court will not apply this
factor.

**(12) Awards in Similar Cases**

The parties have not provided any information regarding fee
awards in other FOIA cases. While there appear to be few cases,
if any, from this district in which a FOIA litigant was awarded
attorneys' fees, the Court has independently reviewed several
cases from other districts and is sufficiently satisfied that the
fee award in this case is not disproportionate to those awarded
in other similar cases.

**iv. Litigation Costs**

FOIA also provides for a prevailing party to recover
"litigation costs reasonably incurred." 5 U.S.C. §
522(a)(4)(E). Plaintiff seeks to recover $2,617.60 in litigation
costs, representing $2,367.60 for deposition transcription costs
and $250 in filing fees. The costs of depositions are generally
recoverable "if the taking of the deposition is shown to have
been reasonably necessary in the light of facts known to counsel
at the time it was taken." Copper Liquor, Inc. v. Adolph Coors
Co., 684 F.2d 1087, 1099 (5th Cir. 1982), modified in part on
other grounds, 701 F.2d 542 (5th Cir. 1983) (en banc), overruled
on other grounds, Int'l Woodworkers v. Champion Intern., 790 F.2d

1174, 1175 (5th Cir. 1986).

Here, the Court previously found that the depositions for which Plaintiff seeks compensation were "the most appropriate procedure to resolve the factual dispute between the parties regarding the adequacy of Defendant's response to Plaintiff's FOIA request."[20]  The Court therefore finds that such costs were reasonably incurred and are clearly recoverable.  Having reviewed the evidence submitted in support of this request,[21]  the Court concludes these expenses are sufficiently documented and will therefore award Plaintiff the full $2,617.60 requested.

### D. Conclusion

Plaintiff Joaquin Navarro Hernandez has demonstrated that he has both "substantially prevailed" in this litigation and that he is entitled to an award of reasonable attorneys' fees and costs, as required under 5 U.S.C. § 552(a)(4)(E).  Accordingly, and for the reasons stated above,

**IT IS ORDERED** that Plaintiff Joaquin Navarro Hernandez's **Motion for Attorneys' Fees and Costs (Rec. Doc. 56)** is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant United States Customs and Border Protection Agency shall remit payment to Plaintiff in

---

[20]  Order on Motion for Protective Order, Rec. Doc. 35.

[21]  Rec. Doc. 56-7.

the amount of **$51,526.60**, representing $48,909.00 for attorneys' fees and $2,617.60 for litigation costs.

New Orleans, Louisiana this 6th day of February, 2012.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE